Gary **MUZZEY** and Cynthia Muzzey, as parents and next friends of April Muzzey, a minor, and Patricia Bryan, Individually and as Special Administrator of the Estate of Stephanie Bryan, deceased, and Dennis Bryan, Individually, Plaintiffs,

v.

**KERR–McGEE CHEMICAL CORPORATION,** a Delaware Corporation and Kerr–McGee Corporation, a Delaware Corporation, Defendants.

No. 93 C 3623.

United States District Court,
N.D. Illinois,
Eastern Division.

March 26, 1996.

Patrick J. Kenneally, Thomas Louis Trinley, Shawn A. Warner, Patrick J. Kenneally, Ltd., Chicago, IL, for April Muzzey, Dennis Bryan, Patricia Bryan.

Michael P. Connelly, Thomas F. Tobin, Patrick G. Donnelly, Eugene Stuart Kraus, Anthony John Bruozas, Stephanie Ann Lackritz, Charles Patrick Piacentini, Jr., Connelly & Schroeder, Chicago, IL, James A. Goold, Peter J. Nickles, Elliott Schulder, Coleman

S. Hicks, Alan A. Pemberton, Tracy A. Thomas, Covington & Burling, Washington, DC, for Kerr–McGee Chemical Corporation.

Patrick G. Donnelly, Connelly & Schroeder, Chicago, IL, James A. Goold, Tracy A. Thomas, Covington & Burling, Washington, DC, for Kerr–McGee Corporation.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Before the Court is plaintiffs' motion to bar the expert testimony of Dr. Spivak pursuant to Federal Rule of Evidence 702. For the reasons stated herein, plaintiffs' motion is denied.

### Facts

April Muzzey was born in 1980 and moved to West Chicago in 1986. In 1990, Muzzey's doctors observed an overabundance of red blood cells in her body, a condition known as erythrocytosis. Muzzey contends that she therefore has a disease called polycythemia vera ("PV").[1] PV is a "disorder of unknown cause characterized by an increase in [hemoglobin] concentration and [erythrocytosis]." THE MERCK MANUAL 1189 (Robert Berkow et al. eds., 16th ed. 1992).

For decades, the West Chicago Rare Earths Facility refined monazite ore in order to remove thorium from it.[2] The by-product of this refining process was a sand-like material, called tailings, which retained some thorium. These tailings were dumped in Reed–Keppler Park in West Chicago. While living in West Chicago, Muzzey played in this park. Defendants Kerr–McGee and Kerr–McGee Corp. (collectively, "Kerr–McGee") now own the refining facility. Muzzey has brought this suit alleging that radiation from thorium tailings caused her to contract PV.

Kerr–McGee disagrees that Muzzey has PV, arguing that she has a less serious disease known as secondary erythrocytosis. To show that Muzzey does not have PV, Kerr–McGee intends to offer the expert testimony of Jerry L. Spivak. Dr. Spivak is a professor at the Johns Hopkins University School of Medicine who has done clinical research on the distinctions between PV and secondary erythrocytosis. The plaintiffs do not argue that he is not qualified to testify about Muzzey's illness. They instead bring this motion solely to bar his "opinion that [Muzzey's] secondary erythrocytosis was renal hypoxic erythrocytosis" and his "suggestion that the erythrocytosis was of an unknown type," arguing that these opinions are merely speculation.

### Expert Opinion

Kerr McGee, as the proponent of the proffered expert testimony, bears the burden of establishing its admissibility by a preponderance of the evidence. *Bradley v. Brown*, 852 F.Supp. 690, 697 (N.D.Ind.), *aff'd*, 42 F.3d 434 (7th Cir.1994). To determine whether Kerr–McGee has met its burden, I apply FED.R.EVID. 702 as construed by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Under Rule 702, "[i]f scientific ... knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," an expert witness may testify thereto. A trial judge faced with a proffer of expert scientific testimony

> must determine at the outset ... whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Daubert*, 509 U.S. at 592–93, 113 S.Ct. at 2796. The Seventh Circuit has interpreted *Daubert* to require a two-step inquiry:

> First, the district court must "determine whether the expert's testimony pertains to scientific knowledge. This task requires that the district court consider whether the testimony has been subjected to the scien-

---

1. In 1990, Muzzey's then-treating physician, Dr. Suarez, diagnosed her illness as PV. Muzzey's present treating physician, Dr. Kovach, does not think she has PV.

2. Thorium is a radioactive element—it decays into "daughters," releasing alpha particles as it does so. These alpha particles are radioactive.

tific method; it must rule out 'subjective belief or unsupported speculation.'" . . . [Second], the district court must "determine whether the evidence or testimony assists the trier of fact in understanding the evidence or in determining a fact in issue. That is, the suggested scientific testimony must 'fit' the issue to which the expert is testifying."

*Gruca v. Alpha Therapeutic Corporation,* 51 F.3d 638, 643 (7th Cir.1995) (citing *Porter v. Whitehall Laboratories, Inc.,* 9 F.3d 607, 616 (7th Cir.1993)).

■ Applying this standard, I find that Dr. Spivak's testimony is admissible. Neither party disputes that Muzzey's body produces an excess number of red blood cells, a condition known as erythrocytosis, and that her kidneys produce excess levels of the hormone erythropoietin. Dr. Spivak's opinion explains that erythropoietin is produced primarily by the kidneys. The kidneys may produce extra erythropoietin if they sense hypoxia, which is a continuing shortage of oxygen in the blood. An overproduction of erythropoietin by the kidneys can result in an overproduction of red blood cells. Thus, if Muzzey suffers from a kidney abnormality such that her kidneys erroneously sense hypoxia, then her kidneys could overproduce erythropoietin, resulting in excess red blood cells, or secondary erythrocytosis.[3]

Dr. Spivak references clinical data to support his opinion that Muzzey's right kidney is abnormal. For example, in February of 1991 the Mayo Clinic performed a radioactive renogram which revealed a possible vascular abnormality in the right kidney, as well as an intravenous pyelogram (defining kidney anatomy), which showed a loss of tissue in the upper pole of the right kidney. An abdominal ultrasound examination in May, 1993 revealed that Muzzey's right kidney was one centimeter smaller than her left kidney, which indicates a possible abnormality in renal arterial blood flow. (The plaintiffs do not argue either that this data is flawed or that

Muzzey does not have a kidney abnormality.) Dr. Spivak concluded that the data showed a "persistent abnormality of renal anatomy" which was "consistent with" an overproduction of erythropoietin due to hypoxia.

The fact that Dr. Spivak has stated that he does not know if Muzzey's kidney abnormality has caused her erythrocytosis does not prevent Kerr–McGee from offering Dr. Spivak's opinion that Muzzey suffers from secondary erythrocytosis rather than PV. As required by *Daubert,* this opinion is supported by a scientifically reliable methodology. Muzzey's body produces extremely high levels of erythropoietin after a phlebotomy treatment (blood-letting). Dr. Spivak's own clinical research shows that patients with PV do not have high erythropoietin levels after phlebotomy, but patients with secondary erythrocytosis do. Dr. Spivak notes that his conclusion is reinforced by J.A. Wedzicha, et al., *Serum Immunoreactive Erythropoietin in Hypoxic Lung Disease With and Without Polycythemia,* 69 Clinical Science 413 (1985), which Kerr–McGee asserts demonstrates that reactive erythropoietin increases are typical of secondary erythrocytosis. The plaintiffs have not disputed either Dr. Spivak's findings or the characterization of the article. Thus Dr. Spivak's theory can be and has been tested by the scientific method and has been subjected to peer review and publication. *See Daubert,* 509 U.S. at 592–93, 113 S.Ct. at 2796–97 (setting forth factors for court to consider in determining if scientific testimony is admissible). *See also Schmaltz v. Norfolk & Western Railway Company,* 878 F.Supp. 1119, 1121 (N.D.Ill.1995) (stating that the most important of the factors listed in *Daubert* is "whether the proffered scientific theory can be and has been tested by the scientific method"). The fact that Dr. Spivak's conclusion flows from his own research outside the context of this litigation also weighs in favor of its admissibility. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 43 F.3d 1311, 1317 (9th Cir.1995). *See*

3. Erythropoietin-driven erythrocytosis is called secondary erythrocytosis because it is caused not by an abnormality in the red-blood-cell-producing bone marrow cells themselves but by a "secondary" cause, *i.e.,* the elevated levels of erythropoietin stimulate the bone marrow cells to produce more red blood cells than needed. It is therefore distinct from PV in which the bone marrow cells themselves are afflicted with an abnormality causing them to reproduce clonally in an uncontrolled fashion.

also *In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 742 (3rd Cir.1994).

Accordingly, Dr. Spivak may opine that (1) Muzzey has secondary erythrocytosis and (2) since kidney abnormalities cause secondary erythrocytosis, Muzzey's kidney abnormality is a potential cause of her condition which the plaintiffs' experts have not ruled out. These opinions pertain to scientific knowledge and will assist the trier of fact. *See Gruca*, 51 F.3d at 643.

### Conclusion

For the foregoing reasons, the plaintiffs' motion to bar Dr. Spivak's testimony is denied.